**Nos. 22-2030 & 22-2031**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Associated Builders & Contractors of Western Pennsylvania, *et al.*,

Plaintiffs-Appellants,

v.

Community College of Allegheny County, *et al.*,

Defendants-Appellees.

Associated Builders & Contractors of Western Pennsylvania, *et al.*,

Plaintiffs-Appellants,

v.

Plum Borough, *et al.*,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Pennsylvania
Case Nos. 2:20-cv-00649-WSH and 2:20-cv-01933-WSH

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES

F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOTT
600 Grant St., 4th Floor
Pittsburgh, PA 15219
*Counsel for Appellees Community
College of Allegheny County and
Quintin B. Bullock*

Bruce E. Dice
Dayne Dice
BRUCE E. DICE & ASSOCIATES, P.C.
787 Pine Valley Dr., Suite E
Pittsburgh, PA 15239
*Counsel for Appellee Plum Borough*

Jonathan D. Newman
Lucas R. Aubrey
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh St. NW, Suite 1000
Washington, D.C. 20001
(202) 785-9300

Joshua M. Bloom
JOSHUA M. BLOOM & ASSOCIATES, P.C.
2201 Liberty Ave., Suite 204
Pittsburgh, PA 15222
*Counsel for Appellee Pittsburgh
Regional Building Trades Council, AFL-
CIO*

January 19, 2023

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Appellees Pittsburgh Regional Building Trades Council, Community College of Allegheny County, Quintin B. Bullock, and Plum Borough provide the following corporate disclosure statement:

The Pittsburgh Regional Building Trades Council – a labor organization – is an unincorporated association.  It has no parent companies, and no publicly held company holds ten percent or more of its stock.

The Community College of Allegheny County is a community college established pursuant to Pennsylvania's Community College Act of 1963, as amended.  It has no parent companies, and no publicly held company holds ten percent or more of its stock.

Plum Borough is a municipality incorporated under Pennsylvania law.  It has no parent companies, and no publicly held company holds ten percent or more of its stock.

Appellees are not aware of any nonparty, publicly held corporations with financial interests in the outcome of this proceeding.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. This case is about two project labor agreements ("PLAs") used by public entities in Western Pennsylvania. PLAs are pre-hire labor agreements commonly used in the construction industry that can, like those here, include recognition of a local building and construction trades council and the use of union referral systems to supply the craft labor force. Thirty years ago, the Supreme Court unanimously approved a public entity's use of a similar PLA, and courts have since rejected a range of challenges to PLAs. This case is no different. The Court does not need oral argument to understand or clarify the issues.

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. i

Statement Regarding Oral Argument.......................................................... ii

Table of Authorities.................................................................................... v

Cross-Reference Index .............................................................................. xii

Introduction ................................................................................................1

Statement of the Issues................................................................................2

Statement of Related Cases.........................................................................4

Statement of the Case.................................................................................4

    I.      Procedural History...........................................................................4

    II.     The District Court's Decision...........................................................8

          A.     Standing .................................................................................8

          B.     The Merits ...........................................................................10

Summary of Argument...............................................................................12

Argument...................................................................................................15

    I.      Appellants Do Not Have Standing to Assert Their First Amendment Claim Because the Employees Never Suffered an Invasion of a Legally Protected Interest..............................................................................15

    II.     The District Court Did Not Err in Refusing to Allow Arrow Electric to Seek Prospective Relief Because It Was Not Required to Apply the Discretionary "One Plaintiff" Theory of Standing.............................19

    III.    The District Court Did Not Err in Holding that Plaintiffs Lacked Standing to Seek Prospective Relief in *ABC II* Because the PLA Attached to the Complaint Shows It Applied to One Project Only.....20

IV.     Appellants Failed to Allege Violations of Federal Law. .....................22

    A.     The Complaints Fail to State a Claim Under the First and Fourteenth Amendments. ........................................................22

        1.     The PLAs' Terms Demonstrate that Appellants Did Not Plausibly Allege a Claim of Compelled Membership or Subsidization of the Unions...........................................22

        2.     The Complaints' Allegation that the Unions Will Not Refer Non-Members Failed to Allege a Constitutional Violation Because the Unions Are Not State Actors. .....24

        3.     Appellants Have Not Plausibly Alleged a Compelled-Association Claim...........................................................28

    B.     The Complaints Fail to State a Claim Under the NLRA Because the Public Entities Were Acting as Market Participants in Adopting PLAs for Their Construction Projects. .....................32

    C.     The Complaints Fail to State Antitrust Claims Because the Appellants Do Not Have Antitrust Standing, They Failed to Plead a Violation of the Sherman Act, and the Non-statutory Exemption Favoring Labor Policy Bars Appellants' Claims. .....................40

        1.     Appellants Do Not Have Antitrust Standing Because They Have Not Alleged Any Antitrust Injury Resulting from the PLAs. ...........................................................40

        2.     Appellants Failed to Allege Sufficient Facts to State a Plausible Antitrust Claim................................................42

        3.     Appellants Failed to State an Antitrust Claim Because the Non-Statutory Exemption Favoring Labor Policy Exempts the PLAs from the Sherman Act's Prohibitions. ............45

Conclusion ...........................................................................................50

Certificate of Compliance ............................................................

Certificate of Service ...................................................................

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Aldossari v. Ripp*,
   49 F.4th 236 (3d Cir. 2022) ................................................... 20-21, 24

*Apex Hosiery Co. v. Leader*,
   310 U.S. 469 (1940).................................................................45

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................43

*Associated Builders & Contractors, Inc. v. City of Seward*,
   966 F.2d 492 (9th Cir. 1992) .................................................48

*Associated Builders & Contractors of Mass./R.I., Inc. v. Mass. Water
   Res. Auth.*, 935 F.2d 345 (1st Cir. 1991), *rev'd sub nom. Bldg. &
   Constr. Trades Council of the Metro. Dist. v. Associated Builders
   & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993) ...................................47

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*, 459 U.S. 519 (1983)..........................................................40

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................42, 43

*Bistrian v. Levi*,
   696 F.3d 352 (3d Cir. 2012) .............................................43

*Black v. Ind. Area Sch. Dist.*,
   985 F.2d 707 (3d Cir. 1993) .............................................27

*Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated
   Builders & Contractors of Mass./R.I., Inc.* (*Boston Harbor*),
   507 U.S. 218 (1993).................................................................*passim*

*Bldg. & Constr. Trades Dep't v. Allbaugh*,
   295 F.3d 28 (D.C. Cir. 2002).............................................40

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*,
  678 F.3d 184 (2d Cir. 2012) ..............................................2, 37, 38, 39

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982).......................................................................40

*Blum v. Bacon*,
  457 U.S. 132 (1982).......................................................................25

*Blum v. Yaretsky*,
  457 U.S. 991 (1982)..................................................................18, 26

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) ..........................................................16

*Boley v. Universal Health Servs.*,
  36 F.4th 124 (3d Cir. 2022) ...........................................................15

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001).......................................................................26

*Brown v. Pro Football, Inc.*,
  518 U.S. 231 (1996).......................................................................46

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) ..........................................................40

*Colfax Corp. v. Ill. State Toll Highway Auth.*,
  79 F.3d 631 (7th Cir. 1996) .............................................................2

*Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union No. 100*,
  421 U.S. 616 (1975)......................................................45-46, 47, 48

*Crissman v. Dover Downs Ent. Inc.*,
  289 F.3d 231 (3d Cir. 2002) (en banc) ..........................................26

*Ctr. for Biological Diversity v. Kempthorne*,
  588 F.3d 701 (9th Cir. 2009) .........................................................16

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006).......................................................................15

*Diamond v. Pa. State Educ. Ass'n*,
972 F.3d 262 (3d Cir. 2020) ...............................................................22

*Ehredt Underground, Inc. v. Commonwealth Edison Co.*,
90 F.3d 238 (7th Cir. 1996) ...............................................41, 42, 44, 46

*Elrod v. Burns*,
427 U.S. 347 (1976).............................................................................30

*Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*,
85 F.3d 257 (6th Cir. 1996) ..................................................................2

*Ethypharm S.A. France v. Abbott Laboratories*,
707 F.3d 223 (3d Cir. 2013) ...............................................................41

*Farmer v. United Brotherhood of Carpenters Loc. 25*,
430 U.S. 290 (1977).............................................................................25

*FW/PBS, Inc. v. Dallas*,
493 U.S. 215 (1990).............................................................................16

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019) .............................................................. 42-43

*Harris v. Quinn*,
573 U.S. 616 (2014).............................................................................18

*Hotel Emps. & Rest. Emps. Union Loc. 57 v. Sage Hosp. Res., LLC*,
390 F.3d 206 (3d Cir. 2004) .......................................................*passim*

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*,
515 U.S. 557 (1995).............................................................................29

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ...............................................................41

*In re Schering Plough Corp.*,
678 F.3d 235 (3d Cir. 2012) ...............................................................15

*In re Wade*,
969 F.2d 241 (7th Cir. 1992) ...............................................................24

*Janus v. AFSCME Council 31*,
  138 S. Ct. 2448 (2018)..............................................................13, 22, 23

*Johnson v. Int'l Brotherhood of Teamsters (Loc. 830)*,
  256 F. App'x 481 (3d Cir. 2007) (per curiam) .................................26

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ........................................2, 37, 38, 39

*LaSpina v. SEIU Pa. State Council*,
  985 F.3d 278 (3d Cir. 2021) ...............................................................18

*Lifewatch Servs. Inc. v. Highmark Inc.*,
  902 F.3d 323 (3d Cir. 2018) ........................................... 41, 43-44, 47

*Loc. 357, Int'l Brotherhood of Teamsters v. NLRB*,
  365 U.S. 667 (1961)......................................................................28, 29

*Loc. Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*,
  381 U.S. 676 (1965).............................................................................46

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982).............................................................................25

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).............................................................................16

*M.M.V. v. Garland*,
  1 F.4th 1100 (D.C. Cir. 2021)............................................................19

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019)..................................................................25, 26

*Mich. Bldg. & Constr. Trades Council v. Snyder*,
  729 F.3d 572 (6th Cir. 2013) ..............................................................39

*Moose Lodge No. 107 v. Irvis*,
  407 U.S. 163 (1972).............................................................................18

*N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*,
  431 F.3d 1004 (7th Cir. 2005) .........................................................2, 38

*N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*,
163 F.3d 449 (7th Cir. 1998) ........................................................ 23-24

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,
472 U.S. 284 (1985).........................................................................45

*O'Hare Truck Service, Inc. v. City of Northlake*,
518 U.S. 712 (1996).........................................................................30

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ............................................................22

*Pruneyard Shopping Ctr. v. Robins*,
447 U.S. 74 (1980)...........................................................................32

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982).........................................................................27

*Road-Con, Inc. v. City of Philadelphia*,
No. 19-cv-1667, 2022 WL 17669015 (E.D. Pa. Dec. 14, 2022) ...................2, 18

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984).........................................................................29

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*),
547 U.S. 47 (2006)..............................................................29, 30, 31

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997) ............................................................44

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................16, 21

*Sprauve v. W. Indian Co.*,
799 F.3d 226 (3d Cir. 2015) ............................................................49

*Texaco Inc. v. Dagher*,
547 U.S. 1 (2006).............................................................................44

*Thiebaut v. Colo. Springs Utils.*,
455 F. App'x 795 (10th Cir. 2011) .............................................19, 20

*United States v. Hays,*
   515 U.S. 737 (1995) .......................................................................16

*Vorchheimer v. Philadelphian Owners Ass'n,*
   903 F.3d 100 (3d Cir. 2018) ...............................................20, 21, 24

*W. Penn Allegheny Health Sys., Inc. v. UPMC,*
   627 F.3d 85 (3d Cir. 2010) .........................................................41

*W. Va. Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943)....................................................................29

*Warth v. Seldin,*
   422 U.S. 490 (1975)....................................................................17

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008)....................................................................32

*Yee v. City of Escondido,*
   503 U.S. 519 (1992)....................................................................25

**Statutes**

28 U.S.C. § 1367(a) ...........................................................................49

28 U.S.C. § 1367(c) ...........................................................................49

29 U.S.C. § 158(e) ..........................................................35, 36, 47, 48

42 U.S.C. § 1983 .........................................................................25, 33

**Other Authorities**

2 James W. Moore, *Moore's Federal Practice* (3d ed. 2022)..................21

Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough,*
   67 Duke L.J. 481 (2017) ...........................................................20

Fed. R. Civ. P. 8(e)(2) (former) .....................................................42

Fed. R. Civ. P. 10(c)......................................................................20

Jerome D. Fenton, *Union Hiring Halls Under the Taft-Hartley Act*,
  9 Lab. L.J. 505 (1958)...........................................................................29

U.S. Const. amend. I ...........................................................................*passim*

U.S. Const. amend. XIV ...........................................................2, 5, 22, 25

# CROSS-REFERENCE INDEX

In accordance with Local Rule 28.2, the following index identifies and relates

Defendants-Appellees' answering contentions to Plaintiffs-Appellants' contentions:

| Issue | Appellees' consolidated brief | Appellants' consolidated brief |
|---|---|---|
| **I-III.** Whether Appellants' First Amendment claims should be dismissed for lack of standing | **Pages 15-22** | **Pages 25-31** |
| **IV.** Whether the District Court correctly found that Appellants failed to allege violations of federal law | **Pages 22-49** | **Pages 31-47** |

## INTRODUCTION

This case concerns challenges to two project labor agreements ("PLAs"). One between the Pittsburgh Building and Construction Trades Council ("Pittsburgh Building Trades") and its affiliates (together "Unions") and the Community College of Allegheny County ("CCAC"), and the other between the Unions and Plum Borough. The Associated Builders and Contractors of Western Pennsylvania ("ABC"), a contractors' association, brought both challenges, together with certain of its member contractors and their employees, and certain taxpayers.

PLAs are pre-hire collective bargaining agreements in the construction industry that set terms and conditions of employment for a particular construction project or projects. Thirty years ago, the Supreme Court recognized in a unanimous decision that, "[t]o the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a [PLA], a public entity *as purchaser* should be permitted to do the same." *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.* (*Boston Harbor*), 507 U.S. 218, 231 (1993). The PLA in *Boston Harbor*, like those at issue here, included recognition of a local building and construction trades council and the use of union referral systems to supply the craft labor force. Ever since *Boston Harbor*,

1

contractors and their associations have raised an array of theories to challenge public entities' use of PLAs to no avail.[1]

Here, the plaintiffs alleged that the PLAs violate the First and Fourteenth Amendments, the National Labor Relations Act ("NLRA"), the Sherman Act, and Pennsylvania law. The District Court granted the consolidated motion to dismiss filed by the defendants, and plaintiffs appealed.

The Court should affirm. Appellants do not have standing to assert either the constitutional or antitrust claims. Even assuming Appellants' standing, the complaints failed to state a plausible claim for relief on the federal claims, and the District Court correctly declined to exercise supplemental jurisdiction over the Pennsylvania law claims.

## STATEMENT OF THE ISSUES

1. Do the Appellants have standing to pursue their claim that the PLAs violate the First Amendment by requiring contractors performing work covered by the PLAs to obtain their employees for those projects through the Unions' referral procedures

---

[1] *E.g.*, *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184 (2d Cir. 2012); *Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257 (6th Cir. 1996); *N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004 (7th Cir. 2005); *Colfax Corp. v. Ill. State Toll Highway Auth.*, 79 F.3d 631 (7th Cir. 1996); *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011 (9th Cir. 2010); *Road-Con, Inc. v. City of Philadelphia*, No. 19-cv-1667, 2022 WL 17669015 (E.D. Pa. Dec. 14, 2022).

when no Appellant was ever required to use the PLAs' referral systems, and when no Appellant ever faced any certainly impending risk that they would be required to do so?[2]

2.    Did the District Court abuse its discretion when it concluded that Appellant Arrow Electric did not have standing on its own to pursue prospective relief?[3]

3.    Did the District Court err by holding that Appellants did not have standing to pursue prospective relief relating to future Plum Borough construction projects because the Plum Borough PLA attached to the complaint applies only to one project?[4]

4.    Assuming Appellants have standing, did the District Court err in finding that the complaints failed to allege a violation of federal law?[5]

---

[2]    Raised: Mem. in Supp. of Defs.' Joint Mot. to Dismiss Pls.' Compls. 13-14, ECF Nos. 25 (*ABC I*), 66 (*ABC II*).  Ruling: Appx. 34-38.

[3]    Raised: Br. in Opp'n to Defs.' Joint Mot. to Dismiss Pls.' Compls. 13, ECF Nos. 26 (*ABC I*), 69 (*ABC II*).  Ruling: Appx. 31 n.5.

[4]    Raised: Mem. in Supp. of Defs.' Joint Mot. to Dismiss Pls.' Compls. 10-11, ECF Nos. 26 (*ABC I*), 69 (*ABC II*).  Ruling: Appx. 33-34.

[5]    Raised: Mem. in Supp. of Defs.' Joint Mot. to Dismiss Pls.' Compls. 17-34, ECF Nos. 26 (*ABC I*), 69 (*ABC II*).  Ruling: Appx. 38-58.

## STATEMENT OF RELATED CASES

This case has not been before this Court previously.  Appellees are not aware of any related cases.

## STATEMENT OF THE CASE

### I.    Procedural History

On July 27, 2020, ABC and five of its contractor members – Arrow Electric, Hampton Mechanical, Lawrence Plumbing, R.A. Glancy & Sons, and Westmoreland Electric – filed their First Amended Complaint challenging the PLA between CCAC and the Pittsburgh Building Trades (*"ABC I"*).  Additional plaintiffs in that case were an employee of Hampton Mechanical (Gregory H. Oliver, Jr.); two employees of R.A. Glancy & Sons (Daniel Vincent Glancy and Robert L. Casteel); and two residents and taxpayers of Allegheny County (Jason Phillip Boyd and Robert A. Glancy, IV).  Appx. 104-05, ¶¶ 4-17.

On December 12, 2020, ABC, Hampton Mechanical, Lawrence Plumbing, and R.A. Glancy & Sons filed a complaint challenging a PLA between Plum Borough and the Pittsburgh Building Trades (*"ABC II"*).  Additional plaintiffs in

*ABC II* were employee Casteel and an employee of Hampton Mechanical – Anthony Scarpine.  Appx. 140, ¶¶ 4-11.[6]

In both cases, the plaintiffs asserted four claims for relief, alleging that:  (1) the PLAs violate the First and Fourteenth Amendments by requiring contractors to hire their employees for covered projects through job referral systems operated by the Unions (Appx. 112-13, ¶¶ 42-48; 148-49, ¶¶ 39-46); (2) the PLAs violate the NLRA (*id.* at 113-115, ¶¶ 49-57; 149-51, ¶¶ 47-55); (3) the PLAs violate federal antitrust laws (*id.* at 115-16, ¶¶ 58-63; 151-52, ¶¶ 56-62); and (4) the PLAs violate Pennsylvania's competitive bidding laws (*id.* at 116-18, ¶¶ 64-74; 152-54, ¶¶ 63-73). In both cases, the plaintiffs sought declaratory and injunctive relief, and in *ABC II*, the plaintiffs also sought nominal and compensatory damages.  *Id.* at 118-19, ¶ 75; 158-59, ¶ 92.

Plaintiffs in both cases attached the challenged PLAs to their complaints.  The only substantive difference between the two PLAs is that the CCAC PLA challenged in *ABC I* is a model PLA covering projects on an ongoing basis, Appx. 122, Art. I, § 1, and the PLA in *ABC II* applies only to one project – the "onsite construction of the new borough building," *id.* at 162, Art. I, § 1.  Both PLAs expressly state that

---

[6]    The contractor plaintiffs will be referred to throughout this brief together as "Employers"; the employee plaintiffs together as "Employees"; and CCAC and Plum Borough together as "Public Entities."

any contractor can bid for work covered by the PLAs irrespective of whether the contractor otherwise operates on a union or non-union basis. *Id.* at 122, Art. I, § 2; 163, Art. I, § 2.

With one exception, the PLAs require contractors performing work subject to the PLAs to obtain their employees performing covered work through the applicable Union's referral procedures.[7] Appx. 127, Art. VI, § 3; 170-71, Art. VI, § 3. The PLAs also require the Unions to operate their referral systems "in a non-discriminatory manner" and to make referrals without regard to any "obligations of union membership." *Id.* Both PLAs state unequivocally that employees will not be required "to join a union or to pay dues or agency fees as a condition of being employed, or remaining employed" on a covered project. *Id.* at 172, Art. VI, § 8; *see id.* at 127, Art. VI, § 8 (similar).

The District Court consolidated the cases, and the defendants filed a joint motion to dismiss the complaints. Appx. 219-20, Dkts. 61, 65; 228, Dkts. 21, 24. In responding to the motion to dismiss, Employers R.A. Glancy & Sons, Westmoreland Electric, Hampton Mechanical, and Lawrence Plumbing each submitted virtually

---

[7] The PLAs contain core employee provisions that allow an otherwise non-union contractor to hire a certain number of its employees without using the Unions' referral procedures. Appx. 128, Art. VI, § 9; 172, Art. VI, § 9.

identical declarations. *Id.* at 195-206; 220, Dkt. 69; 229, Dkt. 26. Arrow Electric did not submit a declaration.

The declarations asserted that CCAC had solicited bids for two projects subject to the CCAC PLA, and that Plum Borough had solicited bids for the project covered by the Plum Borough PLA. The Employers stated that they wanted to bid on those projects and would have done so had it not been for the PLA requirement because the PLAs "limit [their] ability to use [their] own employees on the projects that [they] work on." Appx. 196 (R.A. Glancy & Sons), 199 (Westmoreland Electric), 202 (Hampton Mechanical), 205 (Lawrence Plumbing).[8] All but one of the contractors that submitted declarations stated that they were "able and ready" and "certain to submit"[9] bids on future CCAC and Plum Borough projects in "the reasonably foreseeable future if the PLA is removed or enjoined." *Id.* at 196-97 (R.A. Glancy & Sons), 199-200 (Westmoreland Electric), 202-03 (Hampton Mechanical).

---

[8]    The declaration for Lawrence Plumbing states only that it wanted to bid on the Plum Borough project. Appx. 205.

[9]    Lawrence Plumbing stated that it is "likely" to submit bids on at least some future CCAC and Plum Borough projects if the PLA requirement is removed, whereas the other contractors stated that they were "certain" to do so. *Compare* Appx. 206 (Lawrence Plumbing) *with id.* at 197 (R.A. Glancy & Sons), 200 (Westmoreland Electric), 203 (Hampton Mechanical).

## II.     The District Court's Decision

### A.     *Standing*

The District Court held that *ABC I* Employers R.A. Glancy & Sons, Westmoreland Electric, and Hampton Mechanical had alleged a past actual injury because their declarations alleged that they would have bid on specific CCAC projects if not for the PLA.  The District Court held, however, that because Lawrence Plumbing's declaration only referred to its desire to bid on the Plum Borough project, and because Arrow Electric did not submit a declaration, they lacked standing to assert a claim for any past injury resulting from the CCAC PLA.  Appx. 30-31.

The court held that those contractors that submitted declarations had standing to pursue prospective relief in *ABC I* because the declarations demonstrated imminent harm insofar as they stated that if not for the PLA, the contractors were certain or likely to bid on CCAC projects in the future.  Appx. 31.  The court rejected plaintiffs' assertion that Arrow Electric's claims should not be dismissed for lack of standing so long as one plaintiff had standing to seek prospective relief.  *Id.* at 31 n.5.

The District Court found that the complaint in *ABC II*, together with the declarations submitted in response to the motion to dismiss, established the Employers' standing with respect to past injury.  Specifically, the court held that it was enough that the *ABC II* complaint alleged that the Employers had been injured

because of the Plum Borough PLA, and that the declarations had indicated that certain Employers would have bid on the Plum Borough project had they not been subject to the PLA requirement. Appx. 33. The District Court held, however, that no Employer had standing to pursue prospective relief in *ABC II* because, even though the Employers alleged in the complaint that the Plum Borough PLA would harm them in the future on other projects, the PLA attached to the complaint states that it applies only to one project, and the Employers' declarations demonstrated that bids had already been solicited for that project. *Id.* Therefore, the court held, the Employers in *ABC II* had failed to allege future harm and did not have standing to pursue prospective relief. *Id.* at 34.

The District Court found that based on the declarations submitted by their employers (Hampton Mechanical and RA. Glancy & Sons), the Employees in *ABC I* had established standing to sue for past and future harm due to alleged decreased work opportunities. Appx. 36-37. The Employees in *ABC II* are also employees of Hampton Mechanical and R.A. Glancy & Sons. The court held that the Employees in *ABC II* had standing to pursue relief for past harm due to decreased work opportunities, but did not have standing to pursue prospective relief because the Plum Borough PLA applied only to one project. *Id.* at 37.

The District Court found that the Employees in *ABC I* and *ABC II* did not have standing to pursue relief for alleged past and future harm based on having to seek

work through the unions' referral systems because they were never required to use those systems, nor did they show that they would in the future.  Appx. 37 n.7.

The District Court did not decide whether ABC had associational standing in either case, but rather noted that defendants appeared not to object to ABC's associational standing.  Appx. 28 n.3.  Because the court declined to exercise supplemental jurisdiction over the state law claim, it did not determine whether the taxpayer plaintiffs in either case had standing.  *Id.* at 34 n.6.

### B.    The Merits

On the merits, the District Court first explained that the complaints alleged that Employees had a constitutional right to decide whether to join or associate with a union, and that the CCAC and Plum Borough had allegedly violated that right. Therefore, with respect to the constitutional claim, the plaintiffs were the Employees, and the defendants were CCAC and Plum Borough.  Appx. 39.

The court held that the Employees failed to state a plausible claim because the complaints did not allege sufficient facts to state claims for First Amendment violations.  Specifically, the court held that the complaints failed to state a plausible claim that the PLAs compelled Employees to join and/or finance unions.  The court held that the terms of the PLAs prohibited discrimination based on union membership, and that to the extent the Employees were contending that union membership is required to be referred for employment in violation of the express

terms of the PLA, the complaints did not allege sufficient facts.  Appx. 41-42.  The court also held that the complaints failed to state a plausible claim that the PLAs compelled association in violation of the First Amendment because the complaints failed to demonstrate that requiring the Employees to use the Unions' referral systems required ideological or political association protected by the First Amendment.  *Id.* at 43.

The District Court held that the complaints failed to state a plausible claim that the PLAs violated the NLRA because CCAC and Plum Borough were acting as market participants when they entered into the PLAs.  Appx. 49-50.

The District Court further held that the complaints did not allege a plausible antitrust claim because the complaints did not sufficiently allege a *per se* claim, and the failure to allege a relevant market was fatal to any rule of reason and/or monopolization claim.  Appx. 55-57.  Finally, having dismissed the federal claims, the District Court declined to exercise supplemental jurisdiction over the state-law claim.  *Id.* at 58-59.

The District Court dismissed the federal claims without prejudice, and gave the plaintiffs a month to amend their complaints.  The plaintiffs failed to file amended complaints, and the court dismissed the federal claims with prejudice and entered judgment for the defendants.  Appx. at 6-11.

## SUMMARY OF ARGUMENT

I.  The Employees never suffered an invasion of a legally protected interest, and therefore do not have standing to assert their First Amendment claim.  Standing requires that plaintiffs suffer an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and caused by the challenged conduct.  The Employees never had to use the referral systems and were never at imminent risk of being required to do so.  They never suffered, or were at imminent risk of suffering, a concrete and particularized injury.  Though the Employees may wish that their Employers had bid on PLA-covered projects, because they were never compelled to become union members or otherwise interact with the Unions, they did not suffer an invasion of a legally protected interest.

II.   The District Court was not required to permit Arrow Electric to seek prospective relief after it found that Arrow Electric did not have standing.  Appellants point to a *discretionary* judicial shortcut that permits courts to bypass standing for plaintiffs seeking the same relief if one other plaintiff has standing.  That shortcut does not *prohibit* courts from eliminating plaintiffs like Arrow Electric that lack standing.

III.   The *ABC II* Appellants do not have standing for prospective relief. Exhibits to a complaint become part of the complaint and control over contradictory allegations.  Because the plain language of the PLA they attached to their complaint

12

states that the Plum Borough PLA applies only to a single, completed project, the District Court held correctly that Appellants were not at risk of suffering from future enforcement of that PLA.

IV.A.  The complaints fail to state a First Amendment claim.  Appellants' first theory – compelled membership and financial support of the Unions in violation of *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018) – fails because the PLAs do not require anyone to join or pay dues to a Union as a condition of employment.

The allegation in the complaint that the Unions will not refer non-members is contradicted by the language in the PLAs attached as exhibits to the complaints. Therefore, the language of the PLAs controls.  Even if the allegation were accepted as true, the First Amendment claim fails because the Unions are not state actors.  If the Unions will not refer non-members, that conduct is in breach of the Unions' obligations to the Public Entities under the PLAs.  It is not conduct that can be attributed to the Public Entities.  As a result, the state action necessary to state a constitutional claim is absent.

Appellants' compelled expressive association claim fails because the PLAs do not compel any employee to communicate any message or associate in a manner protected by the First Amendment.  Employees need not pledge their allegiance to the Unions, advocate for the Unions, or pay anything to the Unions to obtain a referral through the Unions' referral systems.  No outsider would reasonably

perceive an employee's participation in a hiring hall as an endorsement of the Unions, and therefore, the PLAs' referral provisions do not interfere with Employees' right of expressive association.

B.  The complaints fail to state a claim under the NLRA.  Public entities do not interfere with rights secured by the NLRA when they are acting as market participants.  This Court determines whether a public entity acts as a market participant by analyzing (1) whether the challenged condition serves the public entity's proprietary interest in a project or a transaction as an investor, owner, or financier; and (2) whether the scope of the funding condition is specifically tailored to the proprietary interest, *i.e.*, whether it applies only to the projects at issue.  *Hotel Emps. & Rest. Emps. Union Loc. 57 v. Sage Hosp. Res., LLC*, 390 F.3d 206, 215-16 (3d Cir. 2004).  Here, the District Court held correctly that the PLAs (1) serve the public entities' proprietary interests as construction project owners, and (2) are specifically tailored to the public entities' construction projects.  The PLAs, therefore, are the result of the Public Entities' actions as market participants and do not violate the NLRA.

C.  Appellants do not have antitrust standing because they never alleged an antitrust injury.  Appellants cannot stand on their alleged lost business opportunities because they arose from Appellants' own objections to the PLAs, rather than any restriction on competition.  Appellants also failed to allege sufficient facts to state a

plausible antitrust claim.  By failing to plead a relevant product and geographic market or a *per se* violation of the Sherman Act, Appellants failed to state a plausible claim.  Further, the non-statutory exemption favoring labor policy exempts the PLAs from the Sherman Act's prohibitions because the PLAs concern compensation and working conditions, and resulted from a lawful bargaining process.

If this Court reverses the District Court's decisions on any of the federal claims, it should remand for the District Court to consider whether to exercise supplemental jurisdiction over the Appellants' state-law claims.

## ARGUMENT

**Standard of Review**:  "Review of a party's standing to sue is de novo." *Boley v. Universal Health Servs.*, 36 F.4th 124, 131 (3d Cir. 2022).

## I.  Appellants Do Not Have Standing to Assert Their First Amendment Claim Because the Employees Never Suffered an Invasion of a Legally Protected Interest.

Standing is not dispensed in gross, and therefore, "a plaintiff who raises multiple causes of action 'must demonstrate standing for each claim he seeks to press.'" *In re Schering Plough Corp.*, 678 F.3d 235, 245 (3d Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  Appellants do not have standing to assert the constitutional claim, which alleged that the PLAs' referral procedures violate the First Amendment, because the Employees never had to use

those procedures, nor was it certainly impending that they would be required to do so.[10]

Article III's "irreducible constitutional minimum" of standing requires the Appellants to demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). To show an injury in fact, Appellants had to establish that they suffered some "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

The District Court correctly held that the constitutional claim as alleged is a claim brought on behalf of the Employees. Appx. 39; *see id.* at 112-13, ¶¶ 42-48 (*ABC I* Compl.); 148-49, ¶¶ 39-46 (*ABC II* Compl.). The Employees, however, have never been required to use the referral systems, nor did the complaints allege that

---

[10]    "[F]ederal courts [have] an independent obligation to examine their own jurisdiction." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). Therefore, "the jurisdictional issue of standing can be raised at any time, by either a party or by the court," and Appellees may raise the question of Appellants' standing. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (quotation marks omitted) (quoting *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009)).

their risk of being required to do so was certainly impending.  As a result, they failed to establish that they suffered an invasion of a legally protected interest that is concrete and particularized, and failed to establish that their alleged injury was traceable to the challenged conduct.

Standing "often turns on the nature and source of the claim asserted."  *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  The constitutional claim is a First Amendment claim in which the PLAs are alleged to violate employees' right to expressive association by requiring employees to be hired through the Union's referral systems. To have standing to assert that claim, Employees had to allege the invasion of that protected interest.

They did not.  The Employees failed to allege that they suffered an injury by being required to use the referral systems because they did not allege they have ever been required to do so, nor did they allege that they were at imminent risk of being required to do so.  Appx. 37 n.7.  Nevertheless, the District Court held that the Employees had standing because their Employers' declarations demonstrated that the Employees lost job opportunities because of the PLAs.  The alleged lost job opportunities, however, do not amount to an invasion of the Employees' legally protected First Amendment interest.

 "A plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another

17

kind . . . to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67 (1972) (holding that a plaintiff lacked standing to challenge the constitutionality of the defendant's membership requirements because he had not been injured by those requirements, but instead by requirements relating to guests of members).

Employees may wish that their Employers had bid on PLA projects, but because they were never required to use the Unions' referral systems, they are not "within the class of persons who [were] concretely affected" by those provisions, which are the subject of Employees' claim. *Blum*, 457 U.S. at 999; *see also Harris v. Quinn*, 573 U.S. 616, 657 n.30 (2014) (holding that employees' First Amendment claim challenging the compelled collection of union dues was not ripe because the employees had not yet unionized); *LaSpina v. SEIU Pa. State Council*, 985 F.3d. 278, 286-87 (3d Cir. 2021) (affirming dismissal of employee's compelled unionization claim on standing grounds because, although plaintiff-employee had paid dues as a member, she had not suffered a First Amendment injury because she was never compelled to pay dues *after* she resigned her union membership); *Road-Con, Inc. v. City of Philadelphia*, No. 19-cv-1667, 2022 WL 17669015, at *6-7 (E.D. Pa. Dec. 14, 2022) (holding plaintiffs lacked standing because they failed to demonstrate First Amendment injury because they were never compelled to pay dues even though they allegedly lost work opportunities).

Thus, the Appellants' constitutional claim should be dismissed on jurisdictional grounds because the claim is brought on behalf of Employees, who never suffered an invasion of a legally protected interest nor showed that they were in imminent danger of suffering such an injury.

## II.   The District Court Did Not Err in Refusing to Allow Arrow Electric to Seek Prospective Relief Because It Was Not Required to Apply the Discretionary "One Plaintiff" Theory of Standing.

Appellants do not contend that Arrow Electric has Article III standing. Instead, they contend that the District Court erred by requiring Arrow Electric to independently demonstrate it had standing to seek prospective relief.  In doing so, Appellants rely on cases holding that if several plaintiffs seek the same relief, and at least one of them has standing, the court need not address the others' standing. Appellants' Br. 25-28.  Those cases, however, stand "only for the proposition that a court 'need not' decide the standing of each plaintiff seeking the same relief.  But [they do] not *prohibit* the court from paring down a case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements." *M.M.V. v. Garland*, 1 F.4th 1100, 1110-11 (D.C. Cir. 2021) (citations omitted); *see Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011) (holding that courts are not required to permit a plaintiff who lacks standing to remain whenever a co-plaintiff has standing).  Indeed, even the law review article relied upon by Appellants states that, "[c]ourts do not treat the one-plaintiff rule as

mandatory." Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough*, 67 Duke

L.J. 481, 492 (2017).

The District Court did not err when it refused to apply a judicial shortcut and

instead analyzed whether each plaintiff, including Arrow Electric, had standing.

*Thiebaut*, 455 F. App'x at 802 (rejecting plaintiff's "one-plaintiff" theory of standing

on the sole basis that courts have discretion not to apply it).

### III. The District Court Did Not Err in Holding that Plaintiffs Lacked Standing to Seek Prospective Relief in *ABC II* Because the PLA Attached to the Complaint Shows It Applied to One Project Only.

The District Court held correctly that the *ABC II* plaintiffs do not have

standing to seek prospective relief because the Plum Borough PLA attached to their

complaint specifically states that it applies only to one project. Appx. 34. Appellants

argue that, because they asserted in the introduction to their complaint that Plum

Borough imposes the PLA on each of its construction projects, the *ABC II* plaintiffs

have standing to assert prospective relief. Appellants' Br. 28-29.

The Plum Borough PLA "applies exclusively to the onsite construction of the

new borough building (the 'Project')." Appx. 162, Art. I, § 1. Exhibits to a

complaint become "part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Therefore, as the District Court recognized, when the plaintiffs' "own exhibits

contradict [their] allegations in the complaint, the exhibits control." *Vorchheimer v.*

*Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018); *see also Aldossari v.*

20

*Ripp*, 49 F.4th 236, 258 n.37 (3d Cir. 2022); 2 James W. Moore, *Moore's Federal Practice* § 10.05[5] (3d ed. 2022).

The PLA's explicit language stating that it applies to only one project contradicts the statement in the introduction to the complaint that Plum Borough imposes that PLA on "each of its construction projects." Appx. 139. Appellants do not dispute that contradiction nor try to distinguish *Vorchheimer* or any similar case.

Appellants instead argue that because Plum Borough never denied that it would continue imposing the PLA on its future construction projects, the District Court erred in finding that the exhibit controlled. Appellants' Br. 29-30. That argument turns the burden of demonstrating standing on its head. "[A]s the part[ies] invoking federal jurisdiction," Appellants bear the burden of establishing that they have standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The PLA attached to the complaint, by its own terms, could not apply to any construction project other than the new borough building. Appellants' assertion that they have standing because Plum Borough failed to deny that it would not apply the PLA to other projects erroneously transfers the burden of showing that the Appellants do not have standing to Plum Borough – the defendant.

Finally, Appellants contend that the exhibit to their complaint is but a mere example, not a concession that it was the only PLA Plum Borough ever used or that it would be the last time Plum Borough would use a PLA. Appellants' Br. 30-31.

That contention is contradicted by the *ABC II* complaint.  The opening sentence of that complaint refers to Plum Borough's singular PLA, and even the paragraph relied upon by Appellants refers to the singular PLA attached as an exhibit.  Appx. 138-39. Paragraphs 15 and 16 of the complaint (*id.* at 141) allege that Plum Borough and the Pittsburgh Building Trades have entered into "a project labor agreement," attached as an exhibit.  The rest of the complaint makes allegations concerning that singular PLA, and seeks relief concerning only that singular PLA.  *Id.* at 141-44, ¶¶ 17-24; 148-54, ¶¶ 44, 53, 60, 72.

## IV.   Appellants Failed to Allege Violations of Federal Law.

**Standard of Review**:  The District Court's judgment granting the motion to dismiss for failure to state a claim is reviewed de novo.  *Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 269 (3d Cir. 2020); *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

### A.   *The Complaints Fail to State a Claim Under the First and Fourteenth Amendments.*

#### 1.   *The PLAs' Terms Demonstrate that Appellants Did Not Plausibly Allege a Claim of Compelled Membership or Subsidization of the Unions.*

The District Court held that the Appellants failed to plausibly state a claim that the PLAs compelled membership and financial support of the Unions in violation of *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018).  Specifically, the court found that on their face, the PLAs expressly prohibit requiring anyone to join

the Unions or pay dues as a condition of employment, and the PLAs also expressly state that the referral systems will operate without regard to membership.

The District Court found that the complaints' allegation that this language in the PLAs is "disingenuous" because the Unions "will not refer non-members through their hiring halls" constituted an "*as-applied*" challenge. Appx. 41. As such, the court held that a mere blanket statement that the Unions will not refer non-members, "without any additional facts to explain how this is done in practice," was not sufficient to allege a plausible "as-applied" claim. *Id.*

Appellants contend that their allegation that the Unions will not refer non-members must be accepted as true, and if it is, the complaints state a First Amendment claim under *Janus*. Appellants' Br. 32. Appellants' argument fails because the complaints must be read together with the exhibits, and the exhibits control over any contradictory allegations in the complaints. The complaints themselves concede that the allegation that the Unions "will not refer non-members through their hiring halls" is contradicted by the language in the PLAs, but the complaints contend that the language in the PLAs is "disingenuous." Appx. 108, ¶ 29; 143, ¶ 23. The Appellants have thus "plead [themselves] out of court" by attaching the PLAs, which plainly contradict their naked allegation and "indicate that [they are] not entitled to judgment." *N. Ind. Gun & Outdoor Shows, Inc. v. City*

*of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).

As set forth above, exhibits attached to the complaint become part of the complaint, and allegations in the complaint "must give way to contrary evidence" in attached exhibits. *Aldossari v. Ripp*, 49 F.4th 236, 258 n.37 (3d Cir. 2022); *see Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018). The plain language in the PLAs attached to the complaints states that employees are not required "to join a union or to pay dues or agency fees as a condition of being employed, or remaining employed" on a covered project. Appx. 172, Art. VI, § 8; *see id.* at 127, Art. VI, § 8 (similar). The PLAs also state expressly that the Unions are required to operate their referral systems "in a non-discriminatory manner" and to make referrals without regard to any "obligations of union membership." *Id.* at 127, Art. VI, § 3; 170-71, Art. VI, § 3. The PLAs thus demonstrate that Appellants have failed to state a First Amendment claim based on compelled membership or subsidization of the Unions.

> 2. *The Complaints' Allegation that the Unions Will Not Refer Non-Members Failed to Allege a Constitutional Violation Because the Unions Are Not State Actors.*

Appellants contend that the District Court erred in dismissing their constitutional claim because their allegation that the Unions "are limiting their hiring halls to union members despite the non-discrimination provisions in the PLAs" must

be accepted as true "even if they accuse the Council-affiliated unions of violating the express terms of the [PLAs]." Appellants' Br. 34. If, as Appellants contend, the Unions are acting in violation of the express terms of the PLAs, although that would constitute an unfair labor practice under the NLRA,[11] it would not constitute a violation of the U.S. Constitution because the Unions are not engaged in state action.[12]

The First and Fourteenth Amendment apply only to government – not private – conduct. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Whether Appellants' constitutional claim is characterized as a claim under 42 U.S.C. § 1983 or strictly as a constitutional claim, the issue and test are the same. "[T]he statutory requirement of action 'under color of state law' [under Section 1983] and the 'state action' requirement of the Fourteenth Amendment are identical." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).

---

[11]    "Discrimination in hiring hall referrals [based on union membership] constitutes an unfair labor practice under . . . the NLRA." *Farmer v. United Brotherhood of Carpenters Loc. 25*, 430 U.S. 290, 303 n.11 (1977).

[12]    "It is well accepted [that] an appellee may rely upon any matter appearing in the record in support of the judgment below." *Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982). Defendants raised this state-action argument during oral argument before the court below. Appx. 251, 258. Moreover, "parties are not limited to the precise *arguments* they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) (emphasis added).

"[L]abor unions are generally not state actors – they are private entities." *Johnson v. Int'l Brotherhood of Teamsters (Loc. 830)*, 256 F. App'x 481, 483 (3d Cir. 2007) (per curiam).   Therefore, the Unions' conduct in operating their referral systems cannot constitute state action unless "it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."   *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Crissman v. Dover Downs Ent. Inc.,* 289 F.3d 231, 239 (3d Cir. 2002) (en banc) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).   A plaintiff establishes the requisite state action "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity."   *Halleck*, 139 S. Ct. at 1928 (citations omitted).   None of these situations are present here.

Appellants' contention that the Unions administer referral systems in a manner that is contrary to the PLAs involves only Union conduct, which is not state action and not a traditional public function.   Appellants did not allege the Public Entities compelled the Unions to administer referral systems in a discriminatory manner, or that the Public Entities joined in that administration.   To the contrary, the Public Entities negotiated PLAs that contain clauses expressly *prohibiting* the alleged Union conduct.   Any Union discrimination in violation of those clauses cannot be attributable to the Public Entities.

Further, the contractual relationship between the Unions and the Public Entities does not make the Unions state actors. The Supreme Court has recognized that a private entity does not become a state actor merely because it enters into a contract with a governmental body. In *Rendell-Baker v. Kohn*, the Supreme Court held that a private school did not become a state actor by contracting to provide educational services for a public entity. 457 U.S. 830, 840-43 (1982). In so holding, the Court recognized that the acts of the "many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government . . . do not become acts of the government" just because those corporations work on government contracts. *Id.* at 840-41; *see Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 710 (3d Cir. 1993) (holding that a state contractor and its employees are not state actors).

Accordingly, even if the Court ignored the rule that exhibits to a complaint control over contradictory allegations in the complaint itself, accepting as true Appellants' contradictory allegation concerning the Unions' operation of their referral systems, Appellants would still not have stated a plausible claim for relief because the Unions' actions cannot constitute state action necessary to find a constitutional violation.

###### 3.    *Appellants Have Not Plausibly Alleged a Compelled-Association Claim.*

The District Court correctly held that Appellants failed to plausibly plead their compelled-association claim because "association" with a union through a referral system does not "rise[] to the level of a First Amendment claim."  Appx. 42.  The District Court held that the hiring-hall allegation, alone, did not state a plausible claim because "courts have permitted a great deal of compelled association with unions without violating the First Amendment."  *Id.* at 43.

Appellants do not engage with the District Court's analysis at all.  Instead, they assert that the sole basis for the District Court's dismissal of their claim was the Court's finding that Appellants had not pled sufficient factual detail.  Appellants' Br. 38.  Appellants argue that it was enough for them to have alleged that the PLAs require Employees to associate with the Unions by using their hiring halls as a condition of working on the Public Entities projects, and that the Employees do not want to do so.  *Id.*  That does not state a plausible claim that the PLAs violate Employees' First Amendment right of expressive association.

The Supreme Court has recognized that referral procedures in the building and construction industry "serve[] well both labor and management."  *Loc. 357, Int'l Brotherhood of Teamsters v. NLRB*, 365 U.S. 667, 672 (1961).  This is because "the contractor who frequently is a stranger to the area where the work is done requires a 'central source' for [its] employment needs; and a [construction worker] looking for

a job finds in the hiring hall 'at least a minimum guarantee of continued employment.'" *Id.* at 672-73 (footnotes omitted) (quoting Jerome D. Fenton, *Union Hiring Halls Under the Taft-Hartley Act*, 9 Lab. L.J. 505, 507 (1958)).  Appellants nevertheless claim the referral requirements in the Public Entities' PLAs violate the First Amendment because they compel speech and/or association.

The referral provisions in the Public Entities' PLAs "neither limit[] what [employees] may say nor require[] them to say anything." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*), 547 U.S. 47, 60 (2006).  Indeed, they do not compel any employee to communicate any message, whether desired or not.  *Compare Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 581 (1995) (parade organizers were required "to alter the[ir] message"); *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 628-29 (1943) (students were required to salute and pledge allegiance to the flag).

With respect to protected association, the First Amendment protects freedom of association in two distinct senses – intimate association and expressive association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).  Appellants assert the PLAs' referral provisions violate the right of expressive association.  Appx. 256 (Oral Argument Tr.).

Expressive association protects the right to associate for the purpose of engaging in activities protected by the First Amendment.  *Roberts*, 468 U.S. at 618.

The interaction required by the referral provisions of the Public Entities' PLAs, however, does not come close to interfering with the right of expressive association.

The referral provisions do not, for example, compel employees to pledge their allegiance to the Unions, advocate for the Unions, or pay anything to the Unions. In *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996), for example, a government contractor had its contract terminated "for refusing to comply with demands for political support." And in *Elrod v. Burns*, 427 U.S. 347, 355-56 (1976) (plurality op.), in order to maintain their public employment, employees had to pledge their allegiance to a political party, work for the election of candidates of that party, and contribute a portion of their wages to that party. In both cases, the Court held that compelling plaintiffs to support political candidates and parties interfered with the plaintiffs' First Amendment right of political association. *O'Hare Truck Serv.*, 518 U.S. at 725-26; *Elrod*, 427 U.S. at 372-73. Nothing in the PLAs requires such association.

Appellants' argument that the referral provisions violate the First Amendment right of expressive association because they require unwanted "association" with the Unions is foreclosed by the Supreme Court's decision in *FAIR* and its progeny. In *FAIR*, law schools challenged a federal statute that specified "that if any part of an institution of higher education denies military recruiters access equal to that provided other recruiters, the entire institution would lose certain federal funds."

*FAIR*, 547 U.S. at 51.  The law schools claimed that the law unconstitutionally required the schools to "associate" with military recruiters by allowing the military to engage in recruiting on the law schools' campuses.  *Id.* at 68.  The Supreme Court recognized that the law did indeed require the law schools to "'associate' with military recruiters in the sense that they [had to] interact with them." *Id.* at 69.  But the Court held that this literal "association" with the military recruiters did not infringe upon the protected right of expressive association because those recruiters did not "become members of the school's expressive association," *id.*, and "[n]othing about recruiting suggests that law schools agree with any speech by recruiters," *id.* at 65.  Thus, under *FAIR*, to assert a viable First Amendment right of expressive association claim, a plaintiff must demonstrate more than merely being required to associate in the literal sense.

When assessing First Amendment compelled association claims, courts look to whether an outsider would reasonably perceive a person's required association with a group as reflecting that person's endorsement of the group's views.  *See, e.g., FAIR*, 547 U.S. at 62.  If outsiders would not reasonably perceive one person's association with a group as reflecting the person's embracing or endorsing that group's views, then that person has not been forced to associate in a manner that implicates the First Amendment.  *E.g., id.* at 65 ("Nothing about recruiting suggests that law schools agree with any speech by recruiters, and nothing in the [challenged

law] restricts what the law schools may say about the military's policies."); *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (finding no First Amendment violation where views of individuals granted right to gather signatures and distribute pamphlets in a privately owned shopping center would "not likely be identified with those of the owner"); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 460 (2008) (Roberts, C.J., concurring) ("Voter perceptions matter, and if voters do not actually believe the parties and the candidates are tied together, it is hard to see how the parties' associational rights are adversely implicated.").

Here, the referral provisions in the Public Entities' PLAs do not require the Employees to agree with or endorse any statement or view whatsoever, nor could they be perceived to do so.  Employees are free to voice their disapproval of the Unions, the Public Entities, the PLAs, and collective bargaining in general, and still obtain employment through the Unions' referral procedures.  The PLAs therefore do not interfere with the right of expressive association.

> ### B.    The Complaints Fail to State a Claim Under the NLRA Because the Public Entities Were Acting as Market Participants in Adopting PLAs for Their Construction Projects.

The District Court correctly held that Appellants failed to plausibly allege an NLRA violation.  Appx. 50.  The District Court relied on *Hotel Employees & Restaurant Employees Union Local 57 v. Sage Hospitality Resources, LLC*, 390 F.3d

206 (3d Cir. 2004), to find that the Public Entities acted as market participants when they implemented PLAs because the PLAs advance the Public Entities' proprietary interests as construction-project owners and because the scope of the PLAs is sufficiently tailored to that proprietary interest.  Appx. 48-50.

The District Court explained that although the NLRA does not apply to public sector employers, a plaintiff may bring a claim under 42 U.S.C. § 1983 when a public entity interferes with rights secured by the NLRA.  Appx. 44.  Public entities, however, do not interfere with rights secured by the NLRA when they are acting as market participants.

In *Boston Harbor*, the Court explained that the NLRA preempts a public entity from *regulating* in a zone protected for market freedom or NLRB jurisdiction.  *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 226-27 (1993).  But a public entity does not regulate simply by *acting* within a zone protected by the NLRA.  Instead, "[w]hen a [public entity] owns and manages property, for example, it must interact with private participants in the marketplace.  In so doing, the [public entity] is not subject to pre-emption by the NLRA, because pre-emption doctrines apply only to state *regulation*."  *Id.* at 227.

The Court applied *Boston Harbor* in *Sage Hospitality* and articulated a two-part test to determine whether a public entity acted as a market participant and

therefore escapes preemption review. Under that test, the Court determines (1) whether the challenged condition serves the public entity's proprietary interest in a project or a transaction, as an investor, owner, or financier; and (2) whether the scope of the funding condition is specifically tailored to the proprietary interest, *i.e.*, whether it applies only to the projects at issue. 390 F.3d at 215-16. A procurement decision that "satisfies these two steps . . . reflects the government's action as a market participant and escapes preemption review," while a funding condition that "sweeps more broadly" than the government's "proprietary economic interest . . . must submit to review under labor law preemption standards." *Id.* at 216.

Both CCAC and Plum Borough entered into their PLAs to serve their proprietary interests as owners. The agreements are intended to ensure their projects are completed efficiently and successfully by, *inter alia*, prohibiting work stoppages, standardizing working conditions, establishing effective procedures for resolving disputes, and securing reliable sources of skilled and experienced labor. Appx. 123, Art. III § 1; 164-65, Art. III § 1.

Both PLAs are also "specifically tailored" to Public Entities' proprietary interests. The PLAs state that they apply only to construction projects the Public Entities own. Plaintiffs do not contend otherwise. Appx. 106, ¶ 22 (CCAC PLA applies to college's on-site construction work); 141, ¶ 16 (same with respect to Plum Borough). Because the PLAs are indisputably intended to serve the Public Entities'

proprietary interests in successfully completing their own construction projects and are narrowly tailored to serve that purpose, the District Court correctly held that Public Entities acted as market participants in entering into these PLAs.  *Id.* at 48-50.

Appellants give three reasons why they believe the District Court erred in finding that the Public Entities' conduct is "market participation" for NLRA preemption purposes:  (1) their conduct is not "analogous" to permissible private conduct because the Public Entities are not employers in the construction industry under Section 8(e) of the NLRA, 29 U.S.C. § 158(e); (2) their motives are suspect; and (3) the PLAs cover a range of projects.  None of these claims has merit.

Appellants contend that a public entity avoids preemption principles – *i.e.*, is *exempt* from the NLRA – only by *complying* with the NLRA.  Therefore, Appellants argue, the public entity's conduct must not be merely "analogous" to private conduct, but instead must be identical to such conduct.  Appellants' Br. 41-42.  Indeed, Appellants state that "it *does not matter* that the college and borough are acting as 'market participants.'"  *Id.* at 42.  That argument fundamentally misunderstands the analysis undertaken in *Boston Harbor* and *Sage Hospitality*.

The "issue that is pivotal" in determining whether a public entity can be said to be interfering with rights under the NLRA is "the distinction between government acting as a regulator and government acting as a proprietor or market participant."

*Sage Hosp.*, 390 F.3d at 213.  That distinction does not turn on whether the public entity is acting in a fashion that is identical to that of a private party.  Rather, in *Sage Hospitality*, as set forth above, the Court held that the distinction turns on whether the challenged condition serves to advance the public entity's proprietary interest as an investor, owner, or financier, and whether the condition is specifically tailored to that interest.

In *Boston Harbor*, the Court noted that the exception provided for the construction industry in Section 8(e) of the NLRA "[o]f course" is not made applicable to a public entity because a public entity is excluded from the definition of employer under the NLRA.[13]  507 U.S. at 230-31.  Nevertheless, the Court recognized, a public entity using a PLA is not only using a kind of collective bargaining agreement common in the private construction industry, it is using one Congress specifically sanctioned to "accommodate conditions specific to that industry." *Id.* at 231.

Appellants' argument that it does not matter whether a public entity is a market participant if it acts in a manner that could be prohibited by the NLRA turns the structure of the NLRA and the entire regulatory vs. market participation analysis

---

[13]    The construction industry proviso to NLRA Section 8(e), 29 U.S.C. § 158(e), permits "employers in the construction industry," but no other employers, to agree to restrict subcontracting to entities willing to sign the agreement.

on its head.  The Ninth Circuit rejected the same argument advanced by Appellants

in a similar case involving a PLA challenge:

> Were we to hold . . . that a state's direct participation in the market
> becomes "regulation" subject to preemption whenever a private party
> could not lawfully participate in the market in the same way, we would
> effectively subject state employers to the NLRA's proscriptions.  This
> would conflict with the clear congressional intent to exempt state
> employers from the NLRA's reach.

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1027 (9th Cir. 2010).

Thus, the District Court correctly held that whether the Public Entities would

qualify as the kind of "employers in the construction industry" the NLRA would

permit to sign a PLA if they were private employers is irrelevant to whether they are

engaged in proprietary conduct in using these agreements.  Appx. 45 n.11; *see*

*Johnson*, 623 F.3d at 1028 ("[W]e find no indication in the NLRA that Congress

intended to allow state entities to adopt [PLAs] only if they use a construction-

industry middleman exempt from the NLRA's proscriptions."); *see also Bldg. Indus.*

*Elec. Contractors Ass'n v. City of New York* (*BIECA*), 678 F.3d 184, 192 (2d Cir.

2012) (finding New York City engaged in proprietary conduct by signing a PLA).

Appellants contend that the PLAs cannot be considered "proprietary" because

the agreements "reflect a corrupt, inefficient spoils system" intended to reward the

unions.  Appellants' Br. 43.  Even if Appellants' views about the PLAs were facts

alleged in their complaints, rather than contentions asserted solely in their brief, they

would be irrelevant.  The Court in *Sage Hospitality* rejected the notion that *Boston*

*Harbor* "require[s] a factual investigation into the particular subjective motives of the relevant government agency," finding instead that "the test [i]s objective, based on the language and probable effect of the state ordinance or specification." 390 F.3d at 216 n.7.

The PLAs explicitly state the Public Entities' objectives and the ways in which they designed the agreements to serve those objectives. Appx. 123, 163-65. Appellants' unfounded speculation about the Public Entities' political motivations have no bearing on the preemption analysis. *See also BIECA*, 678 F.3d at 191 (Courts look "primarily to the objective purpose clear on the face of the enactment, not to allegations about individual officials' motivations."); *Johnson*, 623 F.3d at 1026 ("Congress did not intend for the NLRA's . . . preemptive scope to turn on state officials' subjective reasons for adopting a[n] . . . agreement."); *N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005) ("Federal preemption doctrine evaluates what legislation *does*, not why legislators voted for it or what political coalition led to its enactment.").

Finally, Appellants assert that the PLAs are not "tailored" because they allege that they apply to more than one specific project.[14] Appellants' Br. 43. Although the Court in *Boston Harbor* noted that the Water Authority "specifically tailored [its

---

[14] As noted *supra* at 20-22, the Plum Borough PLA by its express terms is limited to one project.

PLA] to one particular job," 507 U.S. at 232, an owner's decision to use a PLA for a range of projects does not convert the agreement into regulation. Instead:

> A contract is "specifically tailored to one particular job" within the meaning of *Boston Harbor* if it governs the parties' behavior on the specific project or projects in the contract rather than on unrelated matters to which the state might not even be a party. . . . A contract does not become preempted simply because it covers a number of projects rather than a single one.

*BIECA*, 678 F.3d at 189 n.2 (citation omitted) (holding that New York City's PLA, covering about half of its construction, was proprietary).

Thus, in *Sage Hospitality*, the Court held that the City of Pittsburgh acted as a proprietor when it required all hospitality employers that received tax increment financing ("TIF") funds from the City to be signatory to a collective bargaining agreement covering their employees. 390 F.3d at 216-18. The Court recognized that, although the ordinance that was challenged applied to multiple projects, it applied only to TIF projects. Therefore, the Court held, the ordinance was specifically tailored to the City's proprietary interests. *Id.* at 218. Similarly, the Ninth Circuit found that a school district acted in its proprietary capacity in adopting a PLA for all projects it financed with a particular bond. *Johnson*, 623 F.3d at 1028; *see also Mich. Bldg. & Constr. Trades Council v. Snyder*, 729 F.3d 572, 578-79 (6th Cir. 2013) (holding that legislation barring PLAs on all public-works projects was proprietary). Contrary to Appellants' claims, "there simply is no logical justification for holding that" a policy establishing "a consistent practice regarding the use of

PLAs" is regulatory when that policy only governs decisions the government makes as a "market participant." *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 35 (D.C. Cir. 2002) (quotation marks omitted).

Because the Public Entities entered into the PLAs to ensure the efficient conduct of their construction projects, and *only* their construction projects, they are acting in their proprietary capacity, and NLRA preemption principles do not apply. The District Court, therefore, held correctly that Appellants failed to state a claim under the NLRA.

### C. The Complaints Fail to State Antitrust Claims Because the Appellants Do Not Have Antitrust Standing, They Failed to Plead a Violation of the Sherman Act, and the Non-statutory Exemption Favoring Labor Policy Bars Appellants' Claims.

#### 1. Appellants Do Not Have Antitrust Standing Because They Have Not Alleged Any Antitrust Injury Resulting from the PLAs.

The question of standing in an antitrust case is a threshold issue. *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998). In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, the Court emphasized that "Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages." 459 U.S. 519, 535 (1983) (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465, 477 (1982)).

40

Thus, a plaintiff bringing an antitrust claim must "allege antitrust standing, including that its 'injury [is] of the type the antitrust laws were intended to prevent and . . . flows from that which makes defendants' acts unlawful.'" *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 331 (3d Cir. 2018) (alterations in original) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 n.9 (3d Cir. 2010)). Such an antitrust injury "is limited to consumers and competitors in the restrained market and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 232 (3d Cir. 2013) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010)).

In *Ehredt Underground, Inc. v. Commonwealth Edison Co.*, 90 F.3d 238 (7th Cir. 1996), the plaintiff alleged that a union and a consumer of construction services violated the Sherman Act by insisting that any contractors employ union members and by assigning jurisdiction over that work to a local union with a higher wage scale, which allegedly caused the plaintiff contractor economic harm. But that harm, which did not arise from any restriction on competition, did not satisfy the requirement of antitrust standing. The Seventh Circuit observed that, "[o]ver and over, we stress that antitrust is designed to protect consumers from producers, not to protect producers from each other or to ensure that one firm gets more of the

41

business." *Id.* at 240.  Thus, the court held, "it is hard to see how [plaintiff] suffered antitrust injury." *Id.*

The loss of business or customers, therefore, does not in and of itself confer antitrust standing.  The injury must arise from a restriction on competition.  Appellants do not allege that they suffered any injury that flows from the PLAs, much less antitrust injury.  The complaints allege that the PLAs' terms are unfair.  They do not allege that the PLAs have restrained competition in an identifiable market to the detriment of consumers or providers of construction services.  Any economic loss allegedly suffered by the Employers arose from their objections to working under the terms of the PLAs and not from any limitations or restrictions the PLAs placed on competition.  Therefore, the Employers lack antitrust standing.

      2.    *Appellants Failed to Allege Sufficient Facts to State a Plausible Antitrust Claim.*

Appellants assert that they "have done more than enough to get to discovery by describing the [PLAs] in detail and attaching them as exhibits."  Appellants' Br. 44.  But, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations in original) (quoting (former) Fed. R. Civ. P. 8(e)(2)).  "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019)

(alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *see also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (When reviewing a complaint, specificity is required; the court must "peel away" conclusory allegations and only consider "well-pled factual allegations.").

The complaints did not even offer "[t]hreadbare recitals of the elements of [the antitrust] cause of action." *Iqbal*, 556 U.S. at 678. Appellants contend that it does not matter. Instead, they assert that they are entitled to hide their cards at the pleading stage and await discovery before stating the nature of their antitrust claim. Appellants' Br. 45. In acknowledging that they do not yet know whether they will be pursuing a Section 1 "unlawful *per se*" or "rule of reason" claim or a Section 2 monopolization claim, they have effectively conceded that they have failed to state *any* antitrust claim, because each of those claims presents its own pleading requirements. Standing alone, "agreements" that happen to "restrain competitive bidding," *id.* at 44, do not create a Sherman Act violation. That is, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57.

To the extent Appellants assert a Section 1 "rule of reason" or Section 2 monopolization claim, the complaints failed to state a claim because they did not plead a relevant product and geographic market. *See Lifewatch Servs. Inc.*, 902 F.3d

at 337 (At the pleading stage, plaintiffs "bear[] the burden of defining both a relevant geographic and a relevant product market."); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 412 (3d Cir. 1997) (plaintiff must allege "possession of monopoly power in the relevant market" to state a Section 2 claim for monopolization). Appellants' failure to allege a relevant product and geographic market is not surprising because a construction owner's own projects could not possibly constitute a relevant antitrust market. *Ehredt Underground*, 90 F.3d at 240 (antitrust plaintiffs failed to sufficiently allege a relevant market in complaining they lost the opportunity to perform construction for a particular power company).

Appellants similarly failed to allege a *per se* violation. A *per se* unlawful price-fixing agreement is an agreement "between two or more competitors." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Agreements between entities that do not compete with each other do not qualify. *Id.* ("These cases do not present such an agreement, however, because Texaco and Shell Oil did not compete with one another."). The PLAs are agreements between project owners and labor organizations, not agreements among competitors. Although the PLAs impose a requirement on each successful bidder and their subcontractors to adopt the agreement, that requirement does not transform the PLAs into agreements between competitors. There is accordingly no basis for characterizing the PLAs as *per se* unlawful.

No court, moreover, has ever characterized a union agreement imposing uniform wages and benefits as a *per se* violation of the Sherman Act. That proposition would be impossible to reconcile with the Supreme Court's decision in *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 503 (1940), in which the Court observed that "an elimination of price competition based on differences in labor standards is the objective of any national labor organization. But this effect on competition has not been considered to be the kind of curtailment of price competition prohibited by the Sherman Act." *Id.* at 503-04.

Putting aside that the PLAs are not agreements between competitors, Appellants did not allege that the PLAs constitute the kind of "concerted refusals to deal or group boycotts" courts have recognized as presenting *per se* violations. *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 290 (1985). Nor could they because the PLAs are available to any successful bidder "without regard to whether that successful bidder performs work at other sites on either a union or a non-union basis." Appx. 122, Art. I, § 2; 163, Art. I, § 2.

> 3.  *Appellants Failed to State an Antitrust Claim Because the Non-Statutory Exemption Favoring Labor Policy Exempts the PLAs from the Sherman Act's Prohibitions.*

The antitrust claim is also foreclosed by the non-statutory exemption, which "has its source in the strong labor policy favoring the association of employees to eliminate competition over wages and working conditions." *Connell Constr. Co. v.*

*Plumbers & Steamfitters Loc. Union No. 100*, 421 U.S. 616, 622 (1975). The exemption therefore applies to labor agreements concerning wages, hours, and working conditions. *See Loc. Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 689-91 (1965) (plurality op.).

In determining whether the non-statutory exemption applies, the fundamental question is whether the conduct challenged "grew out of, and was directly related to, the lawful operation of the bargaining process." *Brown v. Pro Football, Inc.*, 518 U.S. 231, 250 (1996). There can be little question that the PLAs resulted from "the lawful operation of the bargaining process." *Id.* As the *Ehredt Underground* court explained:

> A buyer of construction services may insist that its contractors have labor agreements with an identified union, to reduce the potential for labor unrest. Indeed, the project's owner or general contractor may insist that the subcontractors accede to a particular collective bargaining agreement that provides for wages higher than the subcontractor otherwise would pay.

90 F.3d at 240.

And as noted above, in *Boston Harbor*, the Supreme Court recognized that PLAs are commonly used in the construction industry:

> [When a public entity,] acting in the role of purchaser of construction services, acts just like a private contractor would act, and conditions its purchasing upon the very sort of labor agreement that Congress explicitly authorized and expected frequently to find, it [exemplifies] the workings of the market forces that Congress expected to find.

507 U.S. at 233 (quoting decision below at 935 F.2d 345, 361 (1st Cir. 1991) (Breyer, J., dissenting)).  The kind of labor agreement explicitly authorized by Congress and exemplifying "the workings of the market forces that Congress expected to find" cannot, at the same time, be an arrangement "the antitrust laws were intended to prevent."  *Lifewatch Servs. Inc.,* 902 F.3d at 340.

Appellants assert that the Supreme Court's decision in *Connell* forecloses the application of the non-statutory exemption here.  Appellants' Br. 44.  That argument ignores the obvious differences between the PLAs and the agreement at issue in *Connell*.  The agreement in *Connell* broadly prohibited general contractors from subcontracting work, anywhere in the union's jurisdiction, to employers that did not already have a contract with the union.  421 U.S. at 620.  As the Court observed, those agreements "indiscriminately excluded nonunion subcontractors from a portion of the market, even if their competitive advantages were not derived from substandard wages and working conditions."  *Id.* at 623.  The agreement thus imposed a "direct restraint on the business market . . . that would not follow naturally from the elimination of competition over wages and working conditions." *Id.* at 625. And, because that broad subcontracting agreement also violated Section 8(e) of the NLRA, 29 U.S.C. § 158(e), which prohibits agreements by an employer to refrain from doing business with any other person, the Court rejected the argument that

47

application of the non-statutory exemption was needed to reconcile antitrust law and labor policy.  421 U.S. at 622-625.

The PLAs in this case, by contrast, do not exclude anyone from the market. They permit any contractor to bid to work on a covered project and impose the same conditions on all successful bidders.  In complaining that the PLAs would require all contractors to provide the same wages, benefits, and working conditions, Appellants are complaining about "the elimination of competition over wages and working conditions," which, according to *Connell*, the non-statutory labor exemption was intended to permit.  421 U.S. at 625.  And, unlike the subcontracting agreements in *Connell*, the agreements here are not the type prohibited by Section 8(e) of the NLRA.  *See Boston Harbor*, 507 U.S. at 230 ("The 1959 amendment [to Section 8(e)] permits a general contractor's pre-hire agreement to require an employer not to hire other contractors performing work on that particular project site unless they agree to become bound by the terms of that labor agreement.").  *Connell* therefore does not establish that the non-statutory exemption is inapplicable in this case.[15]

---

[15]    Appellants can be expected to assert in reply that the non-statutory exemption is limited to agreements in the private sector.  Any such assertion would be misplaced.  *See, e.g.*, *Associated Builders & Contractors, Inc. v. City of Seward*, 966 F.2d 492, 498-99 (9th Cir. 1992) (applying the non-statutory exemption to an agreement between a union and a city government, in which the Ninth Circuit acknowledged that the city was not an employer under the NLRA but concluded that

Finally, after dismissing the federal claims, the District Court refused to exercise supplemental jurisdiction over Appellants' state-law claims.  Appx. 58-59. Appellants argue that if the Court reverses the District Court's decisions to dismiss the federal claims, it will trigger "mandatory supplemental jurisdiction" under 28 U.S.C. § 1367(a).  Appellants' Br. 48.

Appellants are correct that the basis for the District Court's refusal to decline supplemental jurisdiction would no longer apply if any of the federal claims were revived, but that does not trigger mandatory supplemental jurisdiction.  Instead, there may be other reasons why the refusal to exercise supplemental jurisdiction would be appropriate under 28 U.S.C. § 1367(c).  Thus, if the Court reverses the District Court's decision on any of the federal claims, the Court should remand to give the District Court an opportunity to determine whether it should exercise supplemental jurisdiction.  *See, e.g.*, *Sprauve v. W. Indian Co.*, 799 F.3d 226, 235 n.11 (3d Cir. 2015) ("Because our decision reverses the basis on which the District Court declined to exercise supplemental jurisdiction over . . . state law claims, we will also vacate that portion of the order and remand to the District Court to give it an opportunity to consider exercising its jurisdiction over those claims.").

---

"[i]t would [nevertheless] be inconsistent to approve such an agreement under labor law, but strike it down under antitrust law").

## CONCLUSION

This Court should affirm the District Court's judgment dismissing Plaintiffs-Appellants' claims.

Respectfully submitted,

s/ Jonathan D. Newman

F. Timothy Grieco
ECKERT SEAMANS CHERIN & MELLOTT
600 Grant St., 4th Floor
Pittsburgh, PA 15219
*Counsel for Appellees Community College of Allegheny County and Quintin B. Bullock*

Bruce E. Dice
Dayne Dice
BRUCE E. DICE & ASSOCIATES, P.C.
787 Pine Valley Dr., Suite E
Pittsburgh, PA 15239
*Counsel for Appellee Plum Borough*

Jonathan D. Newman
    D.C. Bar No. 449141
Lucas R. Aubrey
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh St. NW, Suite 1000
Washington, D.C. 20001
(202) 785-9300

Joshua M. Bloom
JOSHUA M. BLOOM & ASSOCIATES, P.C.
2201 Liberty Ave., Suite 204
Pittsburgh, PA 15222
*Counsel for Appellee Pittsburgh Regional Building Trades Council, AFL-CIO*

January 19, 2023

# CERTIFICATE OF COMPLIANCE

1.  In accordance with Rule 32(g), I certify that this brief (i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 11,773 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and (ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 365, set in Times New Roman font in 14-point type.

2.  In accordance with Local Rule 28.3(d), I certify that I am a member of the bar of the Third Circuit in good standing.

3.  In accordance with Local Rule 31.1(c), I certify that (i) this brief has been scanned for viruses using VIPRE Endpoint Security and is free of viruses; and (ii) when paper copies are required by this Court, the paper copies will be identical to the electronic version of the brief filed via CM/ECF.

s/ Jonathan D. Newman
Jonathan D. Newman
*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I certify that on January 19, 2023, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

s/ Jonathan D. Newman
Jonathan D. Newman
*Counsel for Defendants-Appellees*
