PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2030
_____

ASSOCIATED BUILDERS & CONTRACTORS
WESTERN PENNSYLVANIA;
ARROW ELECTRIC INC.; HAMPTON MECHANICAL
INC.; LAWRENCE
PLUMBING, LLC; R.A. GLANCY & SONS INC.;
WESTMORELAND ELECTRIC
SERVICES LLC; GREGORY H. OLIVER, JR.; DANIEL
VINCENT GLANCY;
ROBERT L. CASTEEL; JASON PHILLIP BOYD; ROBERT
A. GLANCY, IV,

                              Appellants

v.

COMMUNITY COLLEGE OF ALLEGHENY COUNTY;
QUINTIN B. BULLOCK
in his official capacity as President of the Community College
of
Allegheny County; PITTSBURGH REGIONAL BUILDING
TRADES COUNCIL
_____

No. 22-2031

---

ASSOCIATED BUILDERS & CONTRACTORS
WESTERN PENNSYLVANIA;
HAMPTON MECHANICAL INC.; LAWRENCE
PLUMBING LLC; R.A. GLANCY
& SONS INC. as individuals and on behalf of others similarly
situated; ROBERT L. CASTEEL; ANTHONY SCARPINE
as individuals
and on behalf of others similarly situated,

                                                Appellants

v.

PLUM BOROUGH; PITTSBURGH REGIONAL
BUILDING TRADES COUNCIL

---

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2-20-cv-00649 & 2-20-cv-01933)
District Judge: Honorable W. Scott Hardy

---

Argued on June 14, 2023
Before: PORTER, FREEMAN and FISHER, *Circuit Judges*.

---

(Filed: August 29, 2023)

Jonathan F. Mitchell    *ARGUED*
111 Congress Avenue, Suite 400

2

Austin, TX 78701

Walter S. Zimolong, III
Zimolong
P.O. Box 552
Villanova, PA 19085
    *Counsel for Appellants*

F. Timothy Grieco
Gerard Hornby
Eckert Seamans Cherin & Mellott
600 Grant Street
44th Floor, US Steel Tower
Pittsburgh, PA 15219
    *Counsel for Appellees Community College of Allegheny County and Quintin B. Bullock*

Lucas R.J. Aubrey
Jacob J. Demree
Jonathan D. Newman    *ARGUED*
Sherman Dunn
900 7th Street NW
Suite 1000
Washington, DC 20001

Joshua M. Bloom
Joshua M. Bloom & Associates
2201 Liberty Avenue
Suite 204
Pittsburgh, PA 15222
    *Counsel for Appellee Pittsburgh Regional Building Trades Council*

Bruce E. Dice
Bruce E. Dice & Associates
787 Pine Valley Drive
Suite E
Pittsburgh, PA 15239
    *Counsel for Appellee Borough of Plum*

---

## OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

    Collective-bargaining tools help unions influence labor practices and protect workers' rights. One such tool, the project labor agreement, is at the center of these consolidated cases. A project labor agreement is a collective-bargaining agreement between a project owner, contractors, and unions that sets the terms and conditions of employment for a particular construction project. The terms can include things like recognizing a union as the workers' exclusive bargaining representative and paying the workers union wages—even if they are not union members.

    Associated Builders & Contractors, some of its members, and several non-union employees are suing the Community College of Allegheny County and Plum Borough, among other defendants, for using project labor agreements. Plaintiffs claim the project labor agreements violate the First and Fourteenth Amendments, the National Labor Relations Act, the Sherman Act, and Pennsylvania's competitive-bidding laws for government projects. The District Court dismissed Plaintiffs' federal claims on the merits and declined to exercise supplemental jurisdiction over their state law claims. While we

agree the complaints do not survive dismissal, we base our conclusion on Plaintiffs' lack of standing.

I.

A. Factual History

The Community College of Allegheny County and Plum Borough each entered into a project labor agreement (PLA) with the Pittsburgh Regional Building and Construction Trades Council. The terms of the two PLAs are essentially identical. Each requires "all construction work" covered by the agreement to be "contracted exclusively" to contractors who agree to the PLA's terms. App. 122, 162. Contractors may award contracts or subcontracts on PLA-covered projects to entities that do not have an agreement with the relevant union, so long as the entity abides by the terms of the PLA. The PLA "applies exclusively" to the project specified therein. App. 122, 162. The Community College PLA defines a project as each "bid proposal," App. 122, while the Borough PLA defines a project as "the onsite construction of the new borough building," App. 162.

Contractors who work on these projects must "recognize[] the Unions as the sole and exclusive bargaining representative of all craft employees within their respective jurisdictions working on the Project under the Agreement." App. 126; *see also* App. 170. Contractors must use local union job referral systems (known as union hiring halls) to staff the projects.[1] Even so, contractors retain the right to determine the

---

[1] There are two exceptions to this requirement: (1) if the local union does not have a job referral system, the contractor may hire from any other source after giving the union forty-eight hours to refer an employee; and (2) contractors may hire a certain number of "'core' employees." App. 128, 172.

competency of all employees and to reject union hall referrals. Additionally, contractors must pay employees "the prevailing [union] wage and benefit rates" as well as "pay all required contributions" to the employee benefit funds that cover things like pensions, health care, and vacation.[2] App. 132; *see also* App. 181.

The PLAs contain various non-discrimination clauses. One clause states that no employee is required to join a union or pay agency fees or dues "as a condition of being employed, or remaining employed, on the Project." App. 127; *see also* App. 172. Another requires the union hiring halls to operate in a "non-discriminatory manner and in full compliance with Federal, State, and Local laws." App. 127; *see also* App. 170. Yet another requires the PLA terms to be applied without regard to race, religion, or union membership status.

### B. Procedural History

A group of plaintiffs sued, in two separate cases, challenging the PLAs under federal and state law. Because each "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (citation omitted), knowing the particular parties involved is essential to the analysis that follows. In the Community College case, Plaintiffs are: Associated Builders & Contractors of Western Pennsylvania (ABC), an

---

[2] However, contractors are not required to contribute to employee benefit funds on behalf of "core employees unless any core employee voluntarily elects to join and become a member of any local union signatory" to the PLA. App. 132, 182.

organization of contractors whose members are almost all non-union; a group of ABC members who are non-union contractors; several of these contractors' non-union employees; and two Allegheny County taxpayers. The Defendants are the Community College of Allegheny County; its President; and the Trades Council. In the Borough case, which is brought as a class action, Plaintiffs are: ABC; a group of ABC members who are non-union contractors; and two of these contractors' non-union employees, who are also Plum Borough taxpayers. The Defendants are Plum Borough and the Trades Council.

In both cases, Plaintiffs bring 42 U.S.C. § 1983 claims based on alleged violations of the First and Fourteenth Amendments and the National Labor Relations Act, 29 U.S.C. §§ 157 & 158. In violation of the First Amendment, Plaintiffs allege the PLAs force employees to join or associate with unions and force contractors to recognize and financially support unions. Under the NLRA, they allege employees are prohibited from working on PLA-covered projects unless they join a union or use the hiring halls, and contractors are improperly forced to recognize unions as the representatives of their non-union employees. Plaintiffs also assert Sherman Act claims. Specifically, they allege the PLAs restrain competition in two ways: by disqualifying contractors from projects unless they hire through the hiring halls, recognize the relevant union as their employees' exclusive representative, and contribute to the relevant union's pension and health-care funds; and by excluding employees from projects unless they join unions or participate in the hiring halls. Finally, Plaintiffs allege the PLAs violate Pennsylvania's competitive-bidding laws by discriminating against non-union contractors and contractors whose employees are represented by a union that does not belong to the Trades Council. Plaintiffs seek declaratory and

injunctive relief, as well as damages (in the Borough case) and costs and attorneys' fees.

In January 2021, the District Court consolidated the Community College and Borough cases. Defendants moved to dismiss for lack of jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). Plaintiffs opposed the motion and submitted declarations from almost all of the contractor plaintiffs. The declarations stated that the contractors did not and "will not bid" on the Community College's and the Borough's PLA-covered projects, but that they are ready and able to bid on future projects should the PLAs be removed. App. 196, 199, 202, 205. The declarations also detailed prior solicitations for bids by the Community College and the Borough related to PLA-covered projects. The District Court granted in part Defendants' 12(b)(1) motion and granted their 12(b)(6) motion on all claims.

On standing, the Court assessed each group of Plaintiffs' eligibility to seek retrospective and prospective relief in general rather than as to each claim. Beginning with the contractors, the Court seems to have based its injury-in-fact analysis on their lost opportunities to bid on PLA-covered public projects. It held that the contractor plaintiffs in the Community College case who submitted declarations established standing for retrospective and prospective relief—but one contractor who did not submit a declaration, Arrow Electric, Inc., failed to allege sufficient facts to substantiate standing.[3] As to the contractor plaintiffs in the Borough case, the Court held all had standing to seek retrospective relief

---

[3] Had Plaintiffs not submitted the contractors' declarations along with their complaints, the District Court reasoned, they would not have alleged sufficient facts to substantiate standing in either case.

based on their declarations. However, none had standing to seek prospective relief: the Borough PLA, which Plaintiffs attached to their complaint, did not threaten future injury because it only applied to onsite construction for "the new borough building," bids for which had already been solicited. App. 162.

As to the employee plaintiffs, the Court based its injury-in-fact analysis on their "inconvenience[]" of having to obtain work through the union hiring halls, App. 34, as well as their "decreased work opportunities," App. 36. It held the employees had standing coextensive with the contractor plaintiffs (their employers) as to the latter injury because the employees relied exclusively on the contractors' declarations to substantiate standing.[4]

Finally, the Court held ABC's standing was coextensive with the contractor plaintiffs because an organization's standing depends on the standing of its members.

On the merits, the Court dismissed all claims. It rejected Plaintiffs' First Amendment claims, both facial and as-applied. Facially, the PLAs did not compel union membership because they expressly prohibited discrimination against non-union members. And absent additional facts about how unions discriminate, Plaintiffs' as-applied challenge failed. The Court dismissed Plaintiffs' NLRA claims on the ground that states do not commit unfair labor practices when they act as market

---

[4] The District Court concluded that the employees could not rely on an alleged "inconvenience" injury to substantiate standing to seek past or future relief because they failed to "submit[] additional facts" to show they had suffered or will suffer that particular harm. App. 37 n.7. By contrast, the Court reasoned that the employees' harm by way of decreased job opportunities was evidenced by the contractors' declarations.

participants, so long as they do so to advance proprietary interests. The Court dismissed Plaintiffs' federal antitrust claims for failure to allege sufficient facts, including the type of claim, its elements, and the relevant market. And, finally, the Court dismissed Plaintiffs' state law claims because no federal claims remained in the case. Plaintiffs appeal.

## II.[5]

Plaintiffs' appeal involves both jurisdictional and merits issues. We have plenary review over the jurisdictional ones, all of which relate to standing in some way. *Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 110 n.6 (3d Cir. 2023). We review de novo a district court's grant of a motion to dismiss. *Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 269 (3d Cir. 2020). And we review for an abuse of discretion a district court's decision to decline supplemental jurisdiction. *United States v. Omnicare, Inc.*, 903 F.3d 78, 94 (3d Cir. 2018).

## III.

### A.

"This case begins and ends with standing." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). That is because "[u]nder Article III, a case or controversy can exist only if a plaintiff has standing to sue." *United States v. Texas*, 143 S. Ct. 1964, 1969 (2023); *see* U.S. Const. art. III, § 2 ("judicial Power shall extend" to "Cases" and "Controversies"). This is "a bedrock constitutional requirement," *Texas*, 143 S. Ct. at 1969, that "preserves the 'tripartite structure' of our Federal Government," prevents the judiciary from intruding on other

---

[5] The District Court had jurisdiction over both cases under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

branches' domains, and ensures plaintiffs are justified in invoking federal courts' remedial power, *see Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)).

To establish Article III standing, a plaintiff bears the burden of showing three "irreducible" elements. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). He "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Standing "is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Rather, a "'plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

The District Court analyzed each group of Plaintiffs' standing to seek prospective and retrospective relief in the case in toto, rather than analyzing standing for each claim.[6] In doing so, the Court seems to have assumed that an injury based on "decreased work opportunities" fully satisfied Article III's standing requirements. App. 36. On appeal, Defendants contest Plaintiffs' standing to bring a First Amendment claim by arguing that lost job opportunities are not a concrete and

---

[6] We agree with the District Court that ABC's standing, as an organization, rises or falls with the standing of its members, the contractor plaintiffs. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977). Thus, we focus our analysis on the contractors' and employees' standing.

particularized injury to a legally protected First Amendment interest. Plaintiffs disagree, arguing that their alleged factual injury need not be tied to the legally protected interest at stake so long as they allege *some* factual injury.

Although Defendants' standing challenge is limited to one claim, standing is an issue of "subject matter jurisdiction [that] cannot be waived" or "forfeited." *See Burton v. Schamp*, 25 F.4th 198, 207 (3d Cir. 2022). We "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). And upon our review of the matter, we conclude that Plaintiffs fail to allege Article III standing, namely an injury in fact, on all claims.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *In re Schering Plough*, 678 F.3d at 244 (citation omitted). To be concrete, an injury must be "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340 (citation omitted). In other words, the asserted harm must have a close relationship to "a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). These harms include physical and monetary harms, as well as "[v]arious intangible harms" such as reputational harms, disclosure of private information, intrusion upon seclusion, and, as relevant here, "harms specified by the Constitution itself." *Id.* at 2204. An injury is particular when it is personal to the plaintiff. *See id.* at 2203. Injury to some third party or society at large will not do. *See United States v. Richardson*, 418 U.S. 166, 171–72 (1974).

We take up Plaintiffs' argument first, which is contrary to the law on Article III standing. Plaintiffs contend they need only allege "*some* factual injury" rather than a First Amendment injury to bring a First Amendment claim. Reply 3. They are wrong. Standing depends on an injury to a legally protected interest. *Lujan*, 504 U.S. at 560–61. While Plaintiffs are right that the size of the injury is irrelevant, whatever mere "trifle" is alleged, Reply 1 (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)), must still be legally cognizable. For that reason, standing "often turns on the nature and source of the claim asserted," whether it be statutory, constitutional, or otherwise. *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("Adarand's claim that the Government's use of subcontractor compensation clauses denies it equal protection of the laws of course alleges an invasion of a legally protected interest . . . ."); *cf. Blum v. Yaretsky*, 457 U.S. 991, 993, 1000–02 (1982) (holding plaintiffs claiming denial of Medicaid benefits had standing to challenge deprivation of property right without due process of law).

Plaintiffs' citations to various standing cases are unhelpful because they deal with the more difficult issue of when a violation of the Administrative Procedure Act inflicts a sufficiently concrete injury. *See SCRAP*, 412 U.S. at 685 & n.12; *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153–54 (1970). In APA (and other statutory violation) cases, certain harms can be alleged *in combination with a mere procedural harm* to demonstrate a concrete injury. *See Camp*, 397 U.S. at 153–54 (legal interest protected by the APA reflects "'aesthetic, conservational, and recreational' as well as economic values" (citation omitted)); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (mere

procedural deprivation "is insufficient to create Article III standing"). In contrast to mere procedural harms, when a plaintiff asserts a constitutional claim, he is alleging a constitutional harm. Thus, we say a plaintiff has standing to bring a First Amendment claim when he suffers injury to his legally protected First Amendment interest—*e.g.*, when the state forces him to speak, *see W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), or associate, *see Boy Scouts of Am. v. Dale*, 530 U.S. 640, 661 (2000).

  Defendants are equally off base in arguing that Plaintiffs fail Article III's concrete and particularized requirements. First, because Plaintiffs allege an injury to themselves, not someone else, there is no particularity issue. Second, while Defendants are correct that job losses, in and of themselves, are not an injury to a legally protected First Amendment interest, their argument is largely beside the point. True, Plaintiffs do not point to a common law action, statute, or constitutional right guaranteeing them a job. But Defendants ignore that, in bringing their First Amendment-based claim, Plaintiffs plead an injury to their right to associate. Though Plaintiffs' association injury may be "intangible," it is no less concrete when it is "specified by the Constitution itself." *See TransUnion LLC*, 141 S. Ct. at 2204. Thus, Plaintiffs, no doubt, have alleged a concrete injury by alleging a harm to their legally protected First Amendment interest to freely associate. Plaintiffs allege the contractors are forced to "recognize a union" as the exclusive representative of their employees, "hire employees from a union's job-referral system[]," and financially "contribute to" unions in order to work on PLA-covered public projects, despite the contractors' commitment to a "free enterprise system" and "Merit Shop philosophy" that the lowest responsible bidder should be awarded a contract. App. 109–10; *see also* App. 144–45. Meanwhile, the

employees are forced to, at worst, join unions or, at best, associate with unions via hiring halls to work on PLA-covered public projects, despite their desire to not associate with or join union ranks.

Plaintiffs' other claims, which allege injury to statutory rights under the NLRA, Sherman Act, and state competitive-bidding laws, are also sufficiently concrete. "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." *TransUnion LLC*, 141 S. Ct. at 2205. But statutory violations that cause some "physical, monetary, or cognizable intangible harm" will satisfy courts that the plaintiff has been "*concretely harmed* by a defendant's statutory violation." *Id.* at 2205–06. The contractors and employees assert more than a "bare procedural violation." *Spokeo*, 578 U.S. at 341. They allege a "tangible, economic harm": decreased work opportunities. *See Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 167 (3d Cir. 2017). That is enough to satisfy Article III's concreteness requirement when it comes to Plaintiffs' claims premised on statutory violations.

Concreteness and particularity, however, are but two of the requirements under Article III. Plaintiffs' concrete injuries must also be actual or imminent. *See Lujan*, 504 U.S. at 564 n.2 (requiring injury to be certainly impending, "not too speculative"); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167 (1972) (denying standing to plaintiff challenging discriminatory membership policies because "he never sought to become a member"). "To be 'imminent,' either a threat of injury must be 'certainly impending,' or there must at least be 'a substantial risk that the harm will occur.'" *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, --- F.4th ----, 2023 WL 5286171, at *2 (3d Cir. 2023) (quoting *Susan B. Anthony List*

*v. Driehaus*, 573 U.S. 149, 158 (2014)). But when the contractors declare they never have and never will bid on PLA-covered projects, they plead themselves out of court by admitting they never experienced and never will experience a compelled association or economic harm. The employees fare no better. To the extent the contractors' declarations are a proxy for determining the actuality or imminence of harms to their employees, the contractors clearly tell us they have not and will not bid on PLA-covered projects. Thus, as far as we can tell, neither will the employees be subjected to the terms of the PLAs by way of being employed by bid-winning contractors. Even more, as the District Court rightly noted, the employees plead no facts, beyond what can be gleaned from the contractors' declarations, that they desire to, actually did, or intend to work on PLA-covered public projects.

The mere fact that the contractors claim they are "able and ready" to bid or work on PLA-covered public projects does not cure their failure to bid in the past and admitted refusal to bid in the future. App. 196, 199, 202, 205. Rather an actual bid, when it is not futile, would have sustained an actual injury, while an intent to bid is the proxy we may use for assuming an injury is imminent. *See, e.g.*, *Adarand Constructors*, 515 U.S. at 211 (concluding contractor's injury was "actual" related to contract it bid on and lost, and "imminent" related to future contracts because contractor "made an adequate showing that sometime in the relatively near future it will bid on another Government contract that offers financial incentives to a prime contractor for hiring disadvantaged subcontractors"); *see also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 302 (3d Cir. 2012) (holding plaintiff who "expressed no concrete desire" to "reenter the market" lacked standing to seek prospective relief on antitrust claim); *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 207 (3d Cir. 2021) ("a statement of intent to take

future action must reflect a concrete intent to do so imminently"). According to the allegations in the complaints and the declarations accompanying them, we have neither.[7]

---

[7] Nor is this an instance in which Plaintiffs seek a declaratory judgment (or other prospective relief) in lieu of pursuing "arguably illegal activity." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (quoting *Steffel v. Thompson*, 415 U.S. 452, 480 (1974) (Rehnquist, J., concurring)). It is well established that "[w]e do not force people seeking to exercise their constitutional rights to wait until they are" sanctioned for doing so. *Nat'l Shooting Sports Found.*, --- F.4th ----, 2023 WL 5286171, at *2. Thus, sometimes a litigant is able to establish Article III standing to challenge a law or regulation—even before it is actually enforced against him—when "the threat of enforcement is imminent." *Id.* But unlike litigants in the past who have successfully maintained standing in pre-enforcement actions, here, Plaintiffs do not allege how their conduct or lack thereof will trigger some legal penalty, civil or criminal, or a threat of administrative action. *See, e.g.*, *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308–10, 2312 (2023) (plaintiff's alleged constitutionally protected behavior would trigger "a variety of penalties," such as fines, cease-and-desist orders, mandatory educational programs, and ongoing compliance reporting measures); *Fed. Election Comm'n v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1648–50 (2022) (plaintiff's alleged constitutionally protected behavior would trigger administrative enforcement of a loan-repayment limitation); *Associated Builders & Contractors Inc. N.J. Chapter v. City of Jersey City*, 836 F.3d 412, 414–16 & n.2 (3d Cir. 2016) (involving a challenge to enforcement of an ordinance that compelled private developers bidding on certain projects to

And without an actual or imminent injury, evidenced by a past bid or an intent to make a future bid, we cannot distinguish Plaintiffs "from a person with a mere interest" in stopping the Community College's and the Borough's use of PLAs on public projects. *See SCRAP*, 412 U.S. at 689 n.14. Therefore, we conclude Plaintiffs lack Article III standing to maintain their claims in federal court.[8]

B.

Though we agree with the District Court that Plaintiffs' complaints should be dismissed, we reach that conclusion based on jurisdictional rather than substantive defects in Plaintiffs' allegations. The District Court dismissed Plaintiffs' federal claims with prejudice after reviewing each of them under Federal Rule of Civil Procedure 12(b)(6) and upon Plaintiffs' failure to file amended complaints.[9] However, "a

---

enter into PLAs where violation of PLA risked loss of tax abatement privileges and increased real estate tax assessments); *Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 222–23 & n.1 (1993) (involving a challenge to a preferred bid specification promulgated by a government agency that required "successful bidder[s]" to abide by collective-bargaining agreement (citation omitted)).

[8] Because Plaintiffs lack standing for failure to allege an actual or imminent injury, we do not address the merits of their claims. And it follows that if all Plaintiffs lack an Article III injury in fact, we need not opine on Arrow Electric's standing in particular or the District Court's decision to not apply the one-plaintiff rule.

[9] The District Court dismissed Plaintiffs' state law claims without prejudice to their ability to bring those claims

dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice.'" *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999). Because we conclude Plaintiffs lack standing rather than fail to state a claim, we are unable to affirm the District Court's dismissal with prejudice of Plaintiffs' federal claims. Instead, we will vacate the District Court's dismissal with prejudice and remand with instructions to dismiss the federal claims without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Ellison*, 11 F.4th at 210.

IV.

"Article III standing is 'not merely a troublesome hurdle to be overcome if possible so as to reach the merits of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers of the Constitution at Philadelphia in 1787.'" *Texas*, 143 S. Ct. at 1969 (quoting *Valley Forge Christian Coll.*, 454 U.S. at 476). Bound by the limits of our constitutionally endowed power, we conclude dismissal without prejudice is appropriate because Plaintiffs lack standing. Thus, we will vacate and remand with instructions for the District Court to dismiss the federal claims without prejudice, and we will affirm the dismissal of the state law claims.

---

in state court. Because we agree that the federal claims fail, the District Court did not abuse its discretion in dismissing the state law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to "decline to exercise supplemental jurisdiction over a claim" if it "dismissed all claims over which it has original jurisdiction").